FRANK, *et al.*, v. REUTER, *et al.*, Appellants.

Division Two, June 13, 1893.

1. **Evidence :** CERTIFIED COPY OF DEED: STATUTE. Under Revised Statutes 1889, section 4861, a party to a suit may read in evidence a certified copy of a recorded deed where it appears he is not the proper custodian of the original, and it is not in his power to produce it.

2. **Fraudulent Conveyance.** The decree of the trial court subjecting certain land to the debt of a judgment creditor as having been conveyed in fraud of creditors, affirmed.

*Appeal from Hannibal Court of Common Pleas.*—HON. T. H. BACON, Judge.

AFFIRMED.

*A. M. Hough* and *J. C. Fisher* for appellants.

(1) The court erred in the admission of the certified copy of the deed of trust mentioned on page twenty of abstract. No sufficient foundation was laid for its admission. Plaintiffs simply testified that the original was not in his possession or under his control. It does not appear that plaintiffs made any effort to get the original. *West v. West*, 75 Mo. 204. (2) Fraud must be proved and must not be presumed. Relationship between the parties to a conveyance is not sufficient to establish a fraudulent intent as to creditors; nor is insolvency of the grantor alone sufficient. *Renny v. Williams*, 89 Mo. 139; *Hoskinson v. Adkins*, 77 Mo. 537. (3) It devolves upon the attacking creditors to introduce proof tending to show that the beneficiaries had knowledge of the fraudulent intent, and also that they participated therein, and of this fact there must be tangible evidence, not mere suspicion. *Hansmann v. Hope*, 20 Mo. 193. (4) There is no evidence that John A. Sauer or H. H. Reuter furnished the money to purchase the property. The finding of the court is against the law and the evidence. The finding is against the weight of evidence.

*Charles Martin* for respondent.

(1) In determining the question of good faith of the transfers of the property in controversy in this case, the court will consider all the facts and circumstances surrounding the transactions, as well as other transactions of the same parties. Bump on Faudulent Conveyances [3 Ed.], 579; *Blen v. Penniston*, 27 Mo. 272. Hence the evidence taken in the case of *Baum, et al., v. Ruth S. Sauer, et al.* is competent in this and tends

to impress the transfers complained of in this case with a fraudulent character. (2) The purchase of the property at sheriff's sale by Singleton, in name of Mary Gerber, was nothing more than a purchase by Sauer for her, and while relationship may not in ordinary cases raise a presumption of bad faith, that, with the other suspicious circumstances attending this sale, would raise a strong inference that the purchase was for the benefit of Sauer and Reuter and with their means. Bump on Fraudulent Conveyances, 56; *King v. Moorey*, 42 Mo. 551; *Van Raalte v. Harrington*, 101 Mo. 602; *Lohman v. Stocke*, 94 Mo. 673; *Benne v. Schnecko*, 100 Mo. 250.

GANTT, P. J.—This is a creditors' bill to divest the title of a certain lot in the town of Elsberry, Missouri, out of defendant, Mrs. R. H. Reuter, and vest the same in Herman H. Reuter, her husband, and John A. Sauer, and to subject the same to certain judgments of the plaintiffs against the firm of Sauer & Reuter.

The evidence shows, that the plaintiffs are judgment creditors of the firm of Sauer & Reuter, composed of the defendants, John A. Sauer and Herman H. Reuter.

The defendants are related to each other as follows: H. H. Reuter and R. H. Reuter are husband and wife; Mary Gerber is a sister of H. H. Reuter; H. H. Reuter is a son-in-law of the wife of John A. Sauer.

The defendants, Sauer & Reuter, were for some years in mercantile business in New Hope, Lincoln county. In 1880, they removed their business to Elsberry, on the line of the St. Louis, Keokuk & North Western Railway, purchased a lot, built a store-house thereon and sold goods until they were closed up by attachment in January, 1882. In August, 1881, they had on hand goods amounting to $5,000 at cost price.

From that time until their suspension of business in January, 1882, they purchased goods on credit of various wholesale merchants in St. Louis, Chicago, Quincy and Cincinnati, amounting to between $18,000 and $19,000; and for the time between August and their failure in January, 1882, sold a great quantity of goods almost exclusively for cash. During this time, they had paid only $3,000 on their indebtedness. When an inventory was taken of the assets attached, it was found that the goods on hand and accounts amounted to only about $10,500. The accounts being about $500, and all contracted before they moved to Elsberry. About the first of January, 1882, they executed a chattel mortgage on their entire stock to Keeling & Kemper and Norton to secure debts to Keeling & Kemper of about $1,000 and Norton's attorney's fees of $250. Upon the filing of this mortgage, most of the creditors attached on the ground that they had fraudulently conveyed their property. Sauer & Reuter defended none of these attachment suits, but consented that the attachments should be sustained, and judgments were so rendered.

The property in controversy in this suit belonged to Sauer & Reuter, and had been used by them as a store-house. It was attached by the creditors with the stock of goods. The judgments in the attachment suits were rendered in September, 1882, and the store-house sold at an adjourned term in November following. At the sale, John Singleton bid the property off in the name of Mary Gerber, he having received instructions as to how to bid and where to get the money, from John A. Sauer. Singleton also bid off the dwelling house at the same time in the name of Mary Gerber.

In less than a year from the date of these sales, to-wit: in August, 1883, Mary Gerber and husband

conveyed the property in this suit to R. H. Reuter, wife of H. H. Reuter, and the dwelling house to Ruth S. Sauer, and in both cases without any consideration. These deeds were kept off of the records until 1887.

Soon after their failure in 1882, Sauer and Reuter each engaged in other business requiring considerable sums of money, but had their business conducted in the name of some third person. Sauer traded in stock to a considerable extent with R. T. Elsberry, furnishing all the money and had this business carried on in the name of defendant, Otis Baldwin. Reuter started and conducted for several years at Elsberry a boot and shoe store, which was run in the name of Mary Gerber, but of which he had absolute control and management, and which he finally closed out, receiving the entire proceeds with Mrs. Gerber's consent.

All the deeds and other transactions with Mary Gerber were prepared and attended to by Sauer and Reuter; as she expresses it, "they had everything fixed up for me" and "*I signed without asking any questions.*"

The only question of fact involved in this record, was whether Mrs. Gerber bought and paid for this lot with her own money. If the lot was bought in and paid for by Sauer & Reuter, the decree of the circuit court must be affirmed.

There is only one exception properly saved to the evidence in the case, and that relates to the admission of the record of a deed of trust, that was shown not to be in the power of plaintiffs to produce, and of which they would not be the custodians, not being parties thereto. There was no error in the admission of the certified copy of the record, under this state of facts. Section 4861, Revised Statutes, 1889.

The only other contention of the appellants is that the evidence is not sufficient to sustain the decree.

There is ample evidence that Sauer & Reuter had defrauded their creditors. The evidence also shows that Sauer paid over the money to Singleton, who purchased the land and caused the deed to be made to Mrs. Gerber. The evidence of Mrs. Gerber is exceedingly unsatisfactory as to the source of this money. No chancellor was bound to accept her story. Taken in connection with all the other facts, it smacks strongly of a fraudulent family arrangement. The facts that she so soon after re-conveyed the lot to her brother's wife; that the deed was secretly kept from the records for four years; the recital of a false consideration; the possession by Reuter & Sauer of both peices of property without accounting for any rents, either to Mrs. Gerber or their wives, are all significant badges of fraud, and we can not say that the learned circuit judge was without evidence to sustain his judgment. In the matter of the weight and credibility of evidence, we are inclined to defer to his finding, and the judgment is affirmed. All concur.